**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**ANTHONY HARRIS,**

    **Plaintiff,**

      **v.**

**DISTRICT OF COLUMBIA WATER**
**AND SEWER AUTHORITY,**

    **Defendant.**

    **Civil Action No.  12-1453 (JEB)**

---

## MEMORANDUM OPINION

Plaintiff Anthony Harris was employed as a Systems Operations Manager by Defendant District of Columbia Water and Sewer Authority.  His lawsuit alleges that WASA unlawfully terminated him in violation of the D.C. Whistleblower Protection Act, federal Civil Rights Acts, and the D.C. Family and Medical Leave Act.  The sole federal count is based on WASA's alleged retaliation against him for complaining to the Mayor about its purported racially discriminatory employment practices.  In now moving to dismiss, Defendant correctly argues that Plaintiff has not sufficiently pled causation under Title VII or Section 1981.  The Court will thus grant Defendant's Motion as to this claim and permit Plaintiff to pursue his state claims in the appropriate local court.

## I.      Background

According to Plaintiff's Complaint, which the Court must presume true for purposes of the Motion, Harris worked as a Systems Operations Manager in the Department of Maintenance Services at WASA from September 1995 until his termination on October 13, 2011.  See Compl., ¶¶ 6, 26.  While employed at WASA, Plaintiff, who is black, believed that Defendant

had terminated a significant number of black employees and hired white employees to replace them. Id., ¶¶ 3, 11. Plaintiff says several WASA managers also expressed concerns to him about questionable employment practices by the company. Id., ¶ 16. In January 2011, Plaintiff wrote a letter to D.C. Mayor Vincent Gray complaining about fraud, waste, abuse, and racial discrimination at WASA. Id., ¶ 17. In February 2011, Plaintiff sent a similar letter to the D.C. City Council committee with oversight of WASA. Id., ¶ 18. Although in May 2011 WASA officials told Plaintiff they wanted to meet with him regarding the letter he had sent to Mayor Gray, they subsequently canceled the meeting. Id., ¶ 19.

Additionally, in 2010, Plaintiff was diagnosed with chronic kidney failure and had to go on dialysis. Id., ¶ 20. On or about October 6, 2011, Plaintiff took leave from WASA to have surgery. Id., ¶ 23. On October 11, Plaintiff called WASA management to inform them that his physician had told him he could not return to work until at least October 26. Id., ¶¶ 24-25. Two days later, on October 13, WASA notified him that his position had been abolished. Id., ¶ 26. Plaintiff alleges that the functions of his position are still being performed, even though WASA indicated that it no longer exists. Id., ¶ 28.

In his Complaint, Plaintiff asserts three counts. First, he alleges that WASA unlawfully terminated his employment in retaliation for his letters, in violation of the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 et seq., and the common law of wrongful discharge. Id., ¶¶ 33-35. Second, Plaintiff alleges that he was terminated in retaliation for his statements that WASA had engaged in racial discrimination in its employment practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e-3(a), and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Id., ¶¶ 37-38. Finally, Plaintiff claims that WASA violated the D.C. Family and

Medical Leave Act, D.C. Code § 32-501, *et seq*., by firing him when he had to be out of work for a medical procedure.  Id., ¶¶ 40-41.

Plaintiff also alleges that he received a right-to-sue letter from the EEOC and satisfied all administrative prerequisites to filing his suit.  Id., ¶ 29.   He brought this action against WASA on September 3, 2012, and Defendant has now filed the instant Motion to Dismiss.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n,

456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)

(internal quotation marks omitted)).  Though a plaintiff may survive a 12(b)(6) motion even if

"recovery is very remote and unlikely," <u>Twombly</u>, 550 U.S. at 555 (citing <u>Scheuer v. Rhodes</u>,

416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to

relief above the speculative level." <u>Id.</u>  at 556.

**III.    Analysis**

Although Plaintiff asserts three causes of action here, the Court need only deal with the

federal retaliation claims in Count II.  Having dismissed those, it will decline to exercise

supplemental jurisdiction over the D.C. claims.

A.  <u>Retaliation</u>

Count II of the Complaint alleges that Defendant violated Title VII and Section 1981

when it terminated him in retaliation for a letter he sent to Mayor Gray about WASA's engaging

in racially discriminatory employment practices.  In moving to dismiss, WASA principally

argues both that Plaintiff's belief that he was opposing an unlawful employment practice when

he sent the letter to the Mayor was not objectively reasonable and that Plaintiff fails to establish a

causal relationship between the alleged protected activity and his termination.  Mot. at 9-10;

Reply at 8-12.  Agreeing with WASA on the latter point, the Court will focus its analysis there.

Title VII makes it illegal for an employer to discriminate against an employee because

the employee "opposed any practice made an unlawful employment practice by this subchapter,

or because he has made a charge … or participated in any manner in an investigation,

proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Under Section 1981, an

employer may not discriminate on the basis of race in "the making, performance, modification,

and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions

of the contractual relationship." 42 U.S.C. § 1981(b).  In <u>CBOCS West, Inc. v. Humphries</u>, 553 U.S. 442 (2008), the Supreme Court held that Section 1981 also covers "retaliation against a person who has complained about a violation of another person's contract-related 'right.'" <u>Id.</u> at 445; <u>see also</u> <u>Welzel v. Bernstein</u>, 436 F. Supp. 2d 110, 118 (D.D.C. 2006) ("[C]ourts agree that an act of retaliation for engaging in activity protected by Title VII 'does not give rise to a claim for retaliation that is cognizable under § 1981 unless that activity was also protected by § 1981.'") (quoting <u>Hawkins v. 1115 Legal Serv. Care</u>, 163 F.3d 684, 693 (2d Cir. 1998)).

   To bring a claim for retaliation under Title VII or Section 1981, Plaintiff must allege that he engaged in a statutorily protected activity, that his employer took an adverse personnel action against him, and that a causal connection exists between the two.  <u>Carney v. Am. Univ.</u>, 151 F.3d 1090, 1095 (D.C. Cir. 1998).  At the motion-to-dismiss stage, a court cannot dismiss a complaint simply for failing to plead the elements of a *prima facie* case.  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510-11 (2002); <u>see also</u> <u>Twombly</u>, 550 U.S. at 586 ("[I]t should go without saying in the wake of <u>Swierkiewicz</u> that a heightened production burden at the summary judgment stage does not translate into a heightened pleading burden at the complaint stage.").  In this case, however, Plaintiff has pled all the elements and has also alleged facts to support his claim.  The Court, therefore, is entitled to consider those facts in determining whether Plaintiff could plausibly prevail here.  <u>See</u> <u>Twombly</u>, 500 U.S. at 570 (plaintiff required to plead "enough facts to state a claim to relief that is plausible on its face").

   There is little doubt that Plaintiff has sufficiently alleged that he both engaged in statutorily protected activity and that he suffered an adverse personnel action.  Statutorily protected activities include "opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment."  <u>Coleman v. Potomac Elec. Power</u>

Co., 422 F. Supp. 2d 209, 212 (D.D.C. 2006) (citation omitted).  "[T]he plaintiff must be

opposing an employment practice made unlawful by the statute under which [he] has filed [his]

claim of retaliation."  Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 92 (D.D.C.

2006) (explaining that if a plaintiff alleges retaliation under 42 U.S.C. § 1981, she must

demonstrate that she had alleged harassment or discrimination based on her race, or some other

category the law protects, before the retaliatory conduct).

    Here, Plaintiff alleges that he opposed Defendant's racially discriminatory employment

practices.  Plaintiff says that he and other employees noticed that Defendant had terminated a

"significant number of [b]lack employees" and hired white employees instead, and managers

"voiced their concerns [to him] over what they saw as questionable employment practices."

Compl., ¶¶ 11, 16.  Plaintiff then wrote separate letters to Mayor Gray and the City Council

complaining about, among many things, "what he perceived as" racial discrimination by

Defendant.  Id., ¶¶ 17-18.  Plaintiff's allegations, when taken as true, arguably meet the first

prong of a retaliation claim.

    Plaintiff must also allege a materially adverse employment action.  See Taylor v. Solis,

571 F.3d 1313, 1320 (D.C. Cir. 2009) ("A materially adverse action is one that 'could well

dissuade a reasonable worker from making or supporting a charge of discrimination.'") (quoting

Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).  Termination is obviously

such an action.  See Wheeler v. Georgetown Univ. Hosp., 788 F. Supp. 2d 1, 5 (D.D.C. 2011).

    The crux of this Motion thus boils down to whether Plaintiff has sufficiently alleged a

causal connection between his protected activity and his termination.  To establish such a

connection, Plaintiff may show "'that the employer had knowledge of the employee's protected

activity, and that the adverse personnel action took place shortly after that activity.'"  Carney,

151 F.3d at 1095 (citing <u>Mitchell v. Baldrige</u>, 759 F.2d 80, 86 (D.C. Cir. 1985)).  In other words,

in the absence of direct evidence, mere temporal proximity may establish causation.  The

Supreme Court has cautioned, however, that "[t]he cases that accept mere temporal proximity

between an employer's knowledge of protected activity and an adverse employment action as

sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal

proximity must be '<u>very close</u>.'"  <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001)

(quoting <u>O'Neal v. Ferguson Constr. Co.</u>, 273 F.3d 1248, 1253 (10th Cir. 2001)) (emphasis

added); <u>see also</u> <u>Singletary v. District of Columbia</u>, 351 F.3d 519, 525 (D.C. Cir. 2003) ("[T]his

circuit has held that a close temporal relationship may alone establish the required causal

connection.").

      What, therefore, does "very close" mean?  "Although the Supreme Court has cited circuit

decisions suggesting that in some instances a three-month period between the protected activity

and the adverse employment action may, standing alone, be too lengthy to raise an inference of

causation, neither the Supreme Court nor the [D.C. Circuit] has established a bright-line three-

month rule."  <u>Hamilton v. Geithner</u>, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012) (finding that three-

month time frame coupled with a pattern of antagonism proved causation).  Without such a

bright-line rule, this Circuit has nonetheless found that a two- or three-month lag between the

protected activity and the adverse employment action generally does not establish the temporal

proximity needed to prove causation.  <u>See</u> <u>Taylor</u>, 571 F.3d at 1322 (rejecting interval of two and

a half months as establishing temporal proximity and citing, with approval, cases that did not

find temporal proximity when two to three months elapsed between protected activity and

adverse employment action) (citing <u>Bilow v. Much Shelist Freed Denenberg Ament &</u>

<u>Rubenstein, P.C.</u>, 277 F.3d 882, 895 (7th Cir. 2001); <u>Clark Cnty. Sch. Dist.</u>, 532 U.S. at 273;

Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002)); see also Tressler v. Amtrak, No. 09-2027, 2012 U.S. Dist. LEXIS 170304, at *35 (D.D.C. Nov. 30, 2012) (explaining that five- or ten-month gap was too lengthy to establish necessary temporal proximity).

Here, WASA knew about Plaintiff's communication to the Mayor no later than May 2011 because management requested a meeting with him then about the letter.  See Compl., ¶ 19.  Since he was fired in mid-October, the gap is at least approximately five months and conceivably more if WASA had learned about the letter closer to its January 2011 transmission date.  This interval is simply too long under this Circuit's authority to establish an inference of causation.

In addition, a significant intervening act took place that also negates any inference of causation.  Plaintiff, who had recently had surgery, called Defendant around October 11, 2011, to explain that he would need to be on medical leave until at least October 26.  Id., ¶¶ 24-25.  A mere two days later, on October 13, Defendant notified him that it had abolished his position.  Id., ¶ 26.  These facts may well improve Plaintiff's causation argument under D.C.'s Family Medical Leave Act, but they weaken his federal retaliation claim because the only reasonable inference they yield is that his medical problem, not his letter to the Mayor, caused his firing.  The medical timing, when coupled with the five-month delay between his protected activity and his termination, can lead to only one conclusion: Plaintiff has not sufficiently alleged causation to survive this Motion.  The Court will thus grant Defendant's Motion to Dismiss as to Count Two.

B.  Supplemental Jurisdiction

In addition to his federal claim, Plaintiff brought other causes of action under District law for wrongful discharge and violations of D.C.'s WPA and FMLA.  See id., ¶¶ 35, 41.  The Court

declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over such claims.  Federal

district courts are given supplemental (or "pendent") jurisdiction over state claims that "form

part of the same case or controversy" as federal claims over which they have original

jurisdiction.  28 U.S.C. § 1367(a).  By the same token, they "may decline to exercise

supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims

over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3). The decision of whether to

exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the

court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."

United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), quoted in Shekoyan v.

Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005).

When deciding whether to exercise supplemental jurisdiction over state claims, federal

courts should consider "judicial economy, convenience, fairness, and comity."  Shekoyan, 409

F.3d at 424.  Nonetheless, "in the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine –

judicial economy, convenience, fairness, and comity – will point toward declining to exercise

jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S.

343, 350 n.7 (1988); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d

1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon Univ. "unaffected

by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of

1990").

Here the factors weigh against retention of the case.  This Court is dismissing the only

federal claim against Defendant.  This case has not progressed in federal court past Defendant's

Motion to Dismiss, and the Court has developed no familiarity with the issues presented.  Cf.

Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case).  The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision.  Finally, Plaintiff will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter.  See Shekoyan, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (internal citation omitted).  The Court, therefore, will dismiss the non-federal claims without prejudice, and Plaintiff may bring such claims, if not barred, in the appropriate local court.

**IV.     Conclusion**

Because Plaintiff's claims cannot survive this Motion, an Order issued this day will dismiss the case.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 13, 2013