UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
ANTHONY S. HARRIS,

      Plaintiff,

      v.                                           Civil Action No. 12-1453 (JEB)

DISTRICT OF COLUMBIA WATER
AND SEWER AUTHORITY,

      Defendant.
```

### MEMORANDUM OPINION

Let go by Defendant District of Columbia Water and Sewer Authority in a reduction of force in 2011, Plaintiff Anthony S. Harris first filed this action for wrongful termination, unlawful discrimination, and violations of the District of Columbia Family and Medical Leave Act in 2012. After several prior motions, a trip up to the D.C. Circuit, and a detour in D.C. Superior Court, WASA has whittled away most of his counts, leaving only a common-law wrongful-termination claim. The Court will now grant WASA summary judgment on this last piece, thereby concluding Harris's lawsuit.

**I.     Background**

   A. Factual History

As the background of this litigation was fleshed out at length in a prior Opinion, see Harris v. Dist. of Columbia Water & Sewer Auth., No. 12-1453, 2016 WL 1192652, at *1-2 (D.D.C. Mar. 28, 2016) (Harris III), the Court will only briefly recite the history here, focusing on those facts relevant to Plaintiff's sole remaining wrongful-termination claim.

Prior to his discharge, Plaintiff was employed with WASA as a Systems Operations Manager. See Def. Statement of Material Facts Not In Dispute (ECF No. 36-2), ¶ 1. As explained in Harris III, his position had been identified for elimination in the fiscal years 2009, 2010, and 2011; although in each year the position was ultimately not abolished, it nevertheless remained on the list of positions likely to be cut in the near future. See Harris III, 2016 WL 1192652, at *1. On October 13, 2011, the other shoe finally dropped, when Harris was notified that his position was being eliminated through a reduction in force (RIF). Id. at *2; see also Declaration of Arthur R. Green, Jr. (ECF No. 36-3), Exh. 6 (RIF Notice).

Harris alleges that the real reason for his termination was not the general RIF, but rather that WASA was retaliating against him for sending several letters to D.C. Mayor Vincent Gray and City Councilmember Harry Thomas, Jr. in early 2011 in which he complained of fraud, waste, and abuse at WASA and also raised concerns about unlawful hiring practices. See Harris III, 2016 WL 119252, at *1-2; see also Opp., Exh. G (Jan. 12, 2011, Email from Plaintiff to Mayor Gray); MSJ, Declaration of Jocelyn R. Cuttino (ECF No. 36), Exh. 8 (Letter from Plaintiff to Harry Thomas, Jr.).

B.  Procedural History

Harris filed this suit in 2012, raising claims of wrongful termination and violations of the D.C. Whistleblower Protection Act, Title VII, 42 U.S.C § 1981, and the D.C. Family and Medical Leave Act. See Compl., ¶¶ 32-43. When this Court dismissed Plaintiff's federal Title VII and Section 1981 claims, it declined to exercise supplemental jurisdiction over his remaining state-law claims under the DCWPA and the DCFMLA. See Harris v. Dist. of Columbia Water & Sewer Auth., 922 F. Supp. 2d 30, 36 (D.D.C. 2013) (Harris I). Plaintiff appealed the dismissal of his federal claims, and the D.C. Circuit reversed, holding that his pleadings were sufficient to

satisfy the causation requirement at the motion-to-dismiss stage. See Harris v. Dist. of Columbia Water & Sewer Auth., 791 F.3d 65 (D.C. Cir. 2015) (Harris II). In the meantime, however, Harris had inexplicably filed the identical state-law claims in D.C. Superior Court. When the D.C. Circuit remanded the instant case, this Court held the state-law claims in abeyance pending the parties' decision as to whether and how to proceed in state court, but permitted briefing to continue as to the federal claims. See Minute Order of September 2, 2015. After WASA moved for summary judgment on the Title VII and Section 1981 claims and Plaintiff failed to oppose despite repeated extensions, the Court granted the motion as conceded and entered judgment for WASA on the federal claims. See Minute Order of November 16, 2015.

That left Harris's state-law causes of action, which the parties then jointly asked this Court to resolve, having completed discovery in Superior Court. See Minute Order of November 30, 2015. WASA moved for summary judgment on nearly all of those state-law claims, which the Court granted. It nevertheless noted that Defendant had not moved on a common-law wrongful-discharge claim nestled within Harris's D.C. Whistleblower Protection Act count, and that sole claim thus survived. See Harris III, 2016 WL 1192652, at *4. The Court then permitted Defendant a chance to seek summary judgment on that last issue, see Minute Order of April 12, 2016, which it has now filed and which Plaintiff opposes.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor.  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.    Analysis**

Plaintiff's sole remaining claim is a wrongful-termination cause of action arising under D.C. common law.  See Compl., ¶ 35 ("Defendant WASA has violated . . . Plaintiff's common law rights to be free from wrongful discharge.").  Because such claims are generally prohibited

for at-will employees, the Court begins by considering whether Harris was so employed. Finding that he was, the Court then addresses Harris's contention that a limited public-policy exception saves him. Concluding that no such exception applies here, the Court will grant Defendant's Motion.

### A. At-Will Employment

"[I]n the District of Columbia . . . an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 30 (D.C. 1991) (citations omitted). Plaintiff argues that he "was a tenured public employee (civil servant) . . . ," Opp. at 25, painting his position as one that was more than merely at will. He contends that because "WASA is an agency of the District of Columbia government," id. at 25, the "laws, rules and regulations [of the District] govern[] the manner by which WASA may conduct reductions in force against its District government employees." Id. at 26. Harris suggests, therefore, that he could not in fact be discharged "at any time and for any reason." Adams, 597 A.2d at 30.

While Plaintiff refers to many D.C. municipal regulations that govern hiring, firing, and reductions in force, he fails to establish the necessary predicate fact – that these personnel regulations apply to WASA employees in particular. Defendant, in contrast, correctly cites the D.C. Code, which in 1996 reconstituted WASA "as an independent authority of the District government . . . that has a separate legal existence within the District government." D.C. Code § 34-2202.02. That provision also expressly exempts WASA employees from nearly all aspects of the D.C. government's merit-personnel system, which governs, among other things, procedures related to reductions in force. Compare id. § 34-2202.15(a) ("no provision of [the merit-personnel system] shall apply to employees of [WASA] . . . ."), with id. § 1-624.02

(section of merit-personnel system outlining required procedures for reductions in force of D.C. government employees).

The District also points to the general provisions of the D.C. WASA Personnel Regulations, which "establish guidelines, including policies and procedures relating to personnel matters . . . [such as] termination of [WASA] employees pursuant to [D.C. Code. § 34-2202.02] . . . ." D.C. Mun. Regs. tit. 21, § 5201.1. More specifically, these regulations state:

> The Authority's personnel regulations and personnel policies and procedures are not a contract(s) of employment. Neither the Regulations nor the personnel policies and procedures guarantee any fixed terms and conditions of employment. <u>Employment with the Authority is not guaranteed for any specific time and may be terminated by the Authority for any lawful reason.</u>

Id. (emphasis added). This provision indisputably characterizes Harris's position – like all employees of WASA – as one that was at will. Accord Black's Law Dictionary (10th ed. 2014) (defining at-will employment as "[e]mployment . . . that may be terminated at any time, by either the employer or the employee, without cause").

Endorsing this interpretation, this Court and another in this district have treated WASA employees as at-will employees, and plaintiffs in those cases have not disputed such findings. See, e.g., Jones v. Dist. of Columbia Water & Sewer Auth., 963 F. Supp. 2d 17, 18-19 (D.D.C. 2013) ("As [Plaintiff] was an at-will employee, the Court granted Defendant's Motion because Plaintiff had failed to include facts that could support the public-policy exception to the at-will doctrine."); Taylor v. Dist. of Columbia Water & Sewer Auth., 205 F.R.D. 43, 45 (D.D.C. 2002) ("[A]fter WASA became an independent authority in 1996 and ceased to be bound by District of Columbia personnel regulations and civil service protections, it instituted an 'at-will' employment system without uniform personnel policies.").

Attempting to sidestep the regulations' express treatment of WASA personnel as at-will employees, Plaintiff rejoins that because he "was a career employee of the District of Columbia government, with a tenure of more than sixteen years," he "ha[d] property rights in his employment, which means he could not be separated from his employment with the District of Columbia government without procedural due process." Opp. at 25. This argument is easily rebutted. "[P]roperty interests are created and their dimensions are defined by . . . state law." Hall v. Ford, 856 F.2d 255, 265 (D.C. Cir. 1988) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)) (internal quotation marks omitted). As the D.C. Circuit has clearly stated, "Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely." Id. Once again, Harris rebuts only with regulations governing personnel actions applicable to standard D.C. government civil servants, see Opp. at 25-27, not regulations that apply to WASA personnel. Failing to uncover either "rules (statutes or regulations)" specific to WASA "or understandings (contracts, expressed or implied)" specific to his position that establish he had a "legitimate expectation" that "he would continue [in] his job," Hall, 856 F.2d at 265, Harris's novel position that he possessed a property interest in his employment founders.

Given this, the Court concludes that no reasonable trier of fact could find that Harris's position was not at will.

B. Public-Policy Exceptions

The Court's conclusion would ordinarily nullify any wrongful-termination claim Plaintiff might raise, since "District of Columbia law . . . presumptively bars wrongful termination claims brought by at-will employees." Vreven v. Am. Ass'n of Retired Persons, 604 F. Supp. 2d 9, 13 (D.D.C. 2009). Under a series of cases beginning with Adams, however, the D.C. Court of

Appeals has recognized a limited number of narrow public-policy exceptions "under which a discharged at-will employee may sue his or her former employer for wrongful discharge . . . ." 597 A.2d at 34. Adams recognized the first such exception: "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." Id. That court later expanded that exception in Carl v. Children's Hospital, 702 A.2d 159 (D.C. 1997) (*en banc*), to situations in which an employee refused to violate a policy that sounded "either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." Id. at 162 (Terry, J., concurring). Judge Christopher R. Cooper of this bench recently offered a clear explanation of ongoing developments:

> Since Carl, District of Columbia courts and federal courts in this district have applied the public policy exception to a number of alleged retaliatory discharges, including those of employees who threatened to disclose a pharmaceutical company's violations of drug-storage regulations; exposed potential violations of a non-profit employer's tax-exempt status; protested food contamination at a nursing home; reported a bribe; and aided an investigation into conduct prohibited by federal contracting regulations. The common denominator in all of these cases is the existence of specific laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained . . . .

Leyden v. Am. Accreditation Healthcare Comm'n, 83 F. Supp. 3d 241, 249 (D.D.C. 2015) (citations omitted).

"To state a claim for wrongful discharge in violation of public policy," then, "the plaintiff must point to some identifiable policy that has been officially declared in a statute or municipal regulation, or in the Constitution, and a close fit between the policy and the conduct at issue in the allegedly wrongful termination." Clay v. Howard Univ., 128 F. Supp. 3d 22, 27 (D.D.C. 2015) (citing Davis v. Cmty. Alternatives of Washington, D.C., Inc., 74 A.3d 707, 709-10 (D.C.

2013)) (internal quotation marks omitted).  Defendant's Complaint and Opposition seem to point to two – the D.C. Whistleblower Act and WASA's RIF regulations – so the Court will consider each in turn.

        1.  *D.C. Whistleblower Act*

In his wrongful-termination cause of action, Harris cites the D.C. Whistleblower Protection Act, possibly as the source of such a public-policy exception.  See Compl., ¶ 35.  In his Complaint, the allegedly protected conduct was "Mr. Harris['s] reporting the suspected illegal and fraudulent and wasteful acts perpetrated by WASA."  Id., ¶ 33.  The problem with Harris's invocation of the DCWPA, however, is that even if that Act establishes a public policy against retaliation for such reporting, under D.C. case law, such a "policy must arise from a statute or regulation <u>that does not provide its own remedy</u>."  Stevens v. Sodexo, Inc., 846 F. Supp. 2d 119, 126 (D.D.C. 2012) (emphasis added); see also Carson v. Sim, 778 F. Supp. 2d 85, 97 (D.D.C. 2011) (same).

To Plaintiff's detriment, the D.C. Court of Appeals has recognized that the DCWPA <u>does</u> provide its own remedies, and so no court-created public-policy exception is needed.  See Carter v. Dist. of Columbia, 980 A.2d 1217, 1226 (D.C. 2009) (remedies made available under DCWPA mean there is no "need to create a new exception to the at-will employment doctrine in order to vindicate an important public policy").  Here, Plaintiff's "conduct in reporting [alleged] violations fell squarely under the aegis of the" Act.  Id. at 1225.  The Act prohibits a supervisory government employee from taking or threatening to take a prohibited personnel action (including termination) in retaliation for a protected disclosure, "which includes disclosure of information to a supervisor that the employee reasonably believes evidences a violation of any D.C. law, rule, or regulation . . . ."  Id. at 1225-26.  Indeed, the DCWPA affords aggrieved employees the right

to bring a civil action, see D.C. Code § 1-615.54, and this is the precise remedy Harris pursued here, raising a claim arising under the Act that was dismissed in this Court's earlier Opinion. See Harris III, 2016 WL 1192652, at *10 ("the Court concludes that WASA is entitled to summary judgment on Plaintiff's DCWPA claim").  The DCWPA, then, cannot be the basis of a possible public-policy exception.

### 2. *WASA RIF Regulations*

In his Opposition, Harris also argues that "WASA failed to follow its RIF regulations," Opp. at 27, implying without actually asserting that these regulations might embody a public policy.  No such luck, for "personnel policies regarding employee discipline, grievances, equal employment opportunity, harassment, and retaliation" do not establish a public policy the violation of which might alone give rise to an exception to the at-will termination rule.  See Brown v. Children's Nat. Med. Ctr., 773 F. Supp. 2d 125, 139 (D.D.C. 2011) (dismissing plaintiff's allegations of violations of internal personnel policies for failure to identify a contravention of public policy).  Allegations that WASA failed to follow its RIF regulations thus cannot resuscitate his common-law wrongful-termination claim.

**IV.    Conclusion**

Because the Court concludes that no reasonable trier of fact could find that Plaintiff was not an at-will employee of WASA or that the public-policy exception applies, the Court will grant summary judgment for Defendant on Plaintiff's single remaining claim.  An accompanying Order will so state.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: July 1, 2016